Case No. 18-1030 of the Appendix v. Debtor's Representatives. Okay, Your Honors, I am so privileged to be here in this magnificent courtroom. Thank you for giving me the opportunity to speak before this honorable court. The reason that I'm here today is to challenge the decision... May I ask briefly, did you reserve some time for rebuttal? No, I did not reserve the rebuttal time because this takes 15 minutes as a whole. Thank you. The reason that I'm here today is to challenge the decision of this court granting motion for a mootness of a motion to file the Korean claimants and dismissing the Korean claimants' motions which related the recalibration of South Korea and the reversal of decisions including cancellation of approval of a Dow Corning product identification by the claims administrator. First of all, I do not contest the recalibration granted by claims administrator shall apply for actively. The settlement facility agreement said that recalibration shall apply for the year of the recalibration and the year after. However, this interpretation should be the case when the claims administrator recalibrate the country's voluntary and his or her initiative. The claims administrator has a discretion to recalibrate the country's and the recalibration should apply for actively. That is the assertion of the appellate and the district court's approval. So I'm sorry, you're asserting that the recalibration should apply retroactively? No, I do not argue that in that way. So you argue that it should apply prospectively? Yes, prospectively. And wasn't that relief granted? No, it is not granted as well because we requested the recalibration on April 7th, April 2014. The claims administrator gave a recalibration approval effective from January 2015. In the meantime, 2014 and 2015, they sent checks reflecting class 6.5. So your complaint is to the period from April to January? Yes. Okay. And did you present that squarely to the district court and did she deny it? Yes, she did not actually point out whether it is correct or not. She just said that the relief we sought was given by the claims administrator. That is why the motions by current claimants should be moved. That is what I heard, that is the understanding I read from her order. Did you make the argument that you are making today to the district court? I did. I clearly included my brief before hearing with the health. Your brief below, can you tell us where that was? Maybe in rebuttal you can find it in the record where that is. I did not clearly. I looked and couldn't find it, so that is why I am wondering. I included my assertion in my brief before the hearing. You did include it in the brief before the hearing? I did. I am sorry, is that the brief that you filed with the motion on April 7? Yes. Okay, so that would be record 965, right? The motion and the brief were both filed on April 7. Your position is you made this argument in that brief? Yes. Do you remember the pages? I also couldn't find it. I think the opening brief was not included. However, I filed a reply after I received a response from the opposing party. I included that. She didn't hold argument on this, right? No. Can you raise this argument for the first time in a reply brief? Actually, I clearly remember I argued, and I briefed in the brief I filed before with the court in this level, and also I argued because the opposing party clearly understood what I am saying. Even if I clearly 100 percent can speak English fluently as Americans, I pointed out in my brief, on the reply brief, I included the timing. The timing of recalibration is clearly wrong because I submitted a request for recalibration in April 2014, but the claims authority activated the recalibration from January 1, 2015. During that seven or eight months, 743 sent 481 checks, only reflecting class 6.2. If recalibration is succeeded, we have to belong to class 6.1. So the difference of each claimant is $22,500 because class 2 claimant or disease claimant is... I think we understand that. She says in her opinion that you, in your response document, which was 1025, I assume that's the reply, said that you wanted recategorization, and she's quoting you, to all Korean claimants who have not yet received compensation. I'm not sure I follow why that would apply to the period of April to December 4. I understand on December 4 why it may apply going forward, but why would it apply to people who already received compensation? The relief you asked for is for all people who have not received compensation yet. Okay. If recalibration was made, there is always two different groups. Claimants already received before recalibration, and also the other claimant who did not receive compensation should be applied by recalibration, new upgraded compensation. So to do that, the claimant administration must conclude the exact time to be effective by way of recalibration. So we argue this should be the date we requested the recalibration, which is April 2014. However, the claimant administration delayed even she knew the recalibration request was made, delayed six or seven months. Later, she applied. She decided to give recalibration. I think we understand the gap time. What is your best legal argument for why it's not within the fund's right to select a date that is administratively their choice for going forward with paying the recategorized amounts? Okay. I am arguing in this way. If a country, if a foreign claimant belongs to a member of a European country, or the common law system was adopted, then your foreign claimant classified automatically to category two, which is guaranteed 60% of compensation compared to domestic claims. Another criteria to belong to category two is change the economy condition, which means per capita GDP of your country must be rich over 60% of the United States. Yes, and I think we understand that. What we're trying to understand is who has the right to choose the date on which that recategorization becomes effective, because you argue, well, we have, Korea has been within the new category for a long time, so that's one date, and then you say, here is the April 7 date that I filed, and then the settlement facility responds that we received your motion, we looked at it, we are going to grant it effective in January of 2015. What is your legal argument for why the settlement facility does not have the right to select that date and make it prospective, particularly in light of your admission? Change the economic conditions should be reflected to decision for recategorization. South Korea becomes per capita GDP, which is more than 60%, at least from the year of 2010, according to the World Factbook of the Central Intelligence Agency of the United States. That is Korea's manifest. But you're not asking for 2010. We have an alternative request. Should it be effective from the year economic conditions satisfy the recategorization, which is 2010. Unless Korea's claims administrator does not satisfy the timing of beginning of effectiveness in 2010, she should at least decide from the beginning of effectiveness, from the date we recast it for recategorization. That is our argument. And your argument, is it just a fairness argument, or is it that it is a breach of fiduciary duty, or it is in violation of the governing documents? What is, other than fairness, and we'll give you that's an understandable complaint, but what is the basis for you to say that they then are not allowed to delay the payments until January? Okay. I argue that is a negligence on the part of Korea's administration. Recategorization should be made because of this set of procedures the government contemplates. Why is it negligence? Do they have an independent obligation to do it, or don't you, under the documents, have to request it be done? Okay. What if the claims administrator did not do anything about the recategorization, even though fluctuation of capital GDP throughout the world every year changes? That's my question. Do they have an independent obligation every year to review the GDPs, and when they hit 60 percent, to recalibrate? And where does that obligation come from? Is it in the documents somewhere? There is no clause in the settlement facility agreement in regarding to recalibration, the obligation of a claims administrator. So there's nothing in the documents that creates the duty. So then back to Judge Stranch's question. Did you file a claim for breach of fiduciary duty? No, I did not. Your argument is only that these changes should be effective from the date of the request, right? That's the argument you're making today. Not all the way back from 2010. If you have some sort of negligence or some sort of duty argument, it only needs to support the argument you're making today. It only needs to go back to the date of the request. Common sense tells us that changing the economic conditions should reflect the date of changing the economic conditions is actually satisfying the requirements for recalibration. It went back to 2010, according to you, right? Yes. But you're not arguing today that it... Because during that period, there is no action to processing Korean claimants. I'm asking you a sympathetic question here. Wouldn't your argument, instead of saying we have negligence going back to 2010, you could say there is a failure to do what the documents require as of the date of the request rather than the date of the changed economic conditions? It seemed like that would make more sense. Yes. If I choose one of them, I would like to go to the date of changing the economic conditions. I have to tell you, we're on the understanding that you've given up that argument. So now I'm confused because I thought when you said not retroactive, that's what you were giving up. Nobody's arguing that you should get it for years before the economic conditions changed. I'm just trying to understand what your argument is. Yes. We'll get a fairer shot if we understand exactly what it is you're arguing. Are you with me? So if your argument is 2010, the difficulty I have with that is it looks like you've given up that argument repeatedly. If your argument is back to the date of the request, then wouldn't it make sense to argue that the documents support that once they get a request, support that from that time they owe the amount that's based on having exceeded 60%? Is that your argument or is it not? My argument clearly says that the alternative way to apply for recalibration from April 2014. The original argument, the principle argument, as you pointed out, this economic condition is satisfied from 2010. So recalibration is followed by economic condition change. Then it is reasonable and logical economic conditions change. Then recalibration must be applied for effectiveness. What does it mean, though, when you say we are not arguing retroactive, we are arguing prospective? When you said that earlier in the argument, what did you mean by that? What I mean by that is there is no action on the part of claims settlement facility during 2010 to 2015. There is no receipt of checks, no actions take place in settlement facility regarding foreign claimants. So in practical reason, we received the first batch of checks in December 2014. There was only class 6.2, which is very low in comparative recalibration, which should be category 2. So to save those 481 claimants, there is no difference to the effective date. The effective should be from 2010 or should be April 2014. Thank you. Thank you. Your time is up. Okay. Thank you. Thank you. May it please the Court, my name is Sydney Scott, and I appear on behalf of the appellee, the Finance Committee. We ask that this Court affirm the District Court's order in its entirety for the reasons stated in both appellees' briefs. However, since I will be spending my time with Ms. Greenspan, I will focus my argument on the motion for reversal, and Ms. Greenspan will address the motion for recategorization and other issues raised by the appellants. The District Court's order should be affirmed for two reasons. First, the District Court correctly found that the Korean claimant's appeal of the claims administrator's decision was barred by the plan's clear and unambiguous terms. Second, even if the appeal wasn't barred, which it was, the District Court correctly found that the Korean claimants received the principal relief requested in their motion for reversal, therefore mooting those requests. Addressing my first argument, which is the clearest path for affirmance, the Korean claimant's appeal of the claims administrator's decision was barred by the plan's clear and unambiguous terms, which provide that a claimant who disagrees with the claims administrator's decision may appeal to the appeals judge whose decision is final and binding. There is no avenue for appeal for a claimant to appeal the claims administrator's decision to the District Court. Here, the Korean claimants disagreed with the claims administrator's decision regarding the eligibility of certain claims. The Korean claimants did not avail themselves of the plan-prescribed process, but instead ignored that process and filed a direct appeal with the District Court. However, as confirmed by this Court in the Clark James case, and as held by the District Court on several occasions, the plan simply does not provide an avenue for a direct appeal for an appeal of the claims administrator's decision. This is for the 48, 481 claims that we're talking about? Approximately, yes, sir. Yes, Your Honor. You're saying his contention is that those were improperly, you didn't increase those, so it was improperly denied an increase based on the 60 percent? Well, that goes more to the motion for recategorization. On the motion for reversal, the Korean claimants challenged the claims administrator's decision to place an administrative hold on 1,700 or so claims. You're not responding to his argument today? No, Your Honor. Ms. Greenspan will address the motion for recategorization. It says hold. It reads like a denial. Was it a hold or was it a denial? And was it, begin with that, was it a hold or was it a denial that was then reversed? The claims were placed in an administrative hold after the claims administrator began to doubt the reliability of the proof submitted to support those claims. And so after she put the claims on an administrative hold and then informed counsel for the Korean claimants that she had decided to no longer accept the affirmative statements, which she had doubts about the reliability of, and she also informed him that claims that were supported by apparently altered documents would be removed from processing. Now, Korean claimants... Was the hold ever removed? The hold was removed and the claims administrator began to process all of those claims that had been put on hold on an individual basis to determine if they were eligible for payment. And that's what ordinarily would happen, right? You all agreed that you would process them individually. Yes, that's what is required under the plan. The claims administrator is required to ensure that each claim, before it receives payment, is supported by reliable forms of proof. And so that's what would happen, especially after, as in this case, the claims were audited to ensure that they were supported by proper proof. They were on hold for three years, right? Yes, Your Honor. So what was going on during the three years as far as these Korean claimants? So the claims administrator instituted an audit, an in-depth investigation into a sample of these claims. Earlier audits were also time-intensive because these medical records are submitted in Korean and required translation, which took a lot of time. And then each one of those sample claims had to be evaluated. And when that sample claim was evaluated during this hold period, was it paid then if you found that the sample was appropriately provided proof of manufacturer? So what happened, this is not particular in the record, but what happened with the sampled claims was there was some fear that there was widespread fraud. And so the claims administrator decided to take a sample of these claims to ensure that there was, to determine whether or not there was widespread fraud. By looking at the sample of claims, they determined that it wasn't widespread and so that these claims could be evaluated on an individual basis. And so that's, so it took three years to figure out that you didn't, that you did not believe you had a massive and complete problem of fraud. And then January of 2014, you withdrew the hold and then you went back and re-evaluated every one of them. Yes, Your Honor. And as acknowledged in the reply brief of the Korean claimants, as of 2016, 1,500 claims had either been processed and paid or were processed and pending payment. And that was two years ago. 1,500 of how many? Of the 17, 1,742 claims. And is that standard, in other words, is that in a standard approval rate or is that higher or lower, just out of curiosity? I'm not sure, Your Honor. I know initially, and this is in the record, when these proof of manufacturers were initially accepted by the claims administrator before the concerns about the reliability of the affirmative statements came up, the claims administrator acknowledged that there was a high approval rate of the Korean claims as opposed, well, in comparison to other claims. The 1,762 that had a POM review in 2009 that were approved, were those paid in 2009? Those were not paid. Okay, so all of the lead-up to this was examination. Right. Because these were a 2004 organization plan, and then a 2008 was when you created the acceptable POM, so nothing was paid from 2008 until 2014. There were some claims that were paid that were determined to be eligible. But the initial audit back in the mid-2000s, 2008, 2009, also involved affirmative statements, but those were other issues, not the issue that was raised subsequently in 2011. Okay, not the POM issue. Well, it was a POM issue, but the issue at that point in time was that affirmative statements were, there were some concerns about the affirmative statements because there was correction fluid that was used on them or there was a Dow Corning product that was listed in the affirmative statement that wasn't available at that time. That was audited and taken care of, and then that is when those POMs were initially approved. It was subsequently the concern about the medical records came up, and that was in 2010. And that resulted in the 2011 notice to the Korean claimants about the hold and that affirmative statements would no longer be accepted. So what is the present-day status of the payment of the Korean claimants? I'm not sure about that. Ms. Greenspan might be better able to answer that question, and it's not in the record. Okay, thank you. Thank you. Don't let me miss a question. Do I press this? Good morning, Your Honors. My name is Deborah Greenspan. I'm appearing today on behalf of the planned proponents in this matter. That is both the Claimants Advisory Committee, Dow Corning, which is now known as Dow Silicones Corporation, and the debtors' representatives, which is a group of individuals who are authorized by the plan to take action to enforce the terms and obligations of the plan. I have specified eight minutes for my portion of the argument this morning. May it please the Court. First, I want to note that we agree with, endorse, and adopt the arguments that were made by Ms. Scott on behalf of the Finance Committee. I am not going to repeat anything or address that part of the appeal at all unless the Court has questions. I'd be happy to respond to any questions you have. My argument is focusing on the recategorization motion that Mr. Kim focused on earlier in this proceeding. Why shouldn't it have been granted as of the date of the motion itself? The date of the motion, as I think the Court previously noted, there have been quite a bit of fluctuation in the requests made by Korean claimants. So Korean claimants initially asked for retroactive recategorization in their initial motion. Then in their reply brief, in response to the position stated by the arguments made by the plan proponents, they dropped that request and asked only that recategorization be provided as of the date of any order that the Court were to issue. They did not specify a date. They did not ask that it be... What's the December 4th date? Is that the date that you all granted it? That is the date that the Finance Committee notified the District Court and Counsel for Korean Claimants that the request had been granted. Then between December 4th and January 1st, is it accurate you paid out over 400 claims under the old calibration? No. In December of 2014, the settlement facility paid 285 claims. Okay. You paid 285 claims. Correct. In the three plus weeks between December 4th and January 1st, when it was recalibrated, did you ever before that pay 285 claims in three weeks? I am not the settlement facility or the Finance Committee, but I can tell you that the process at the settlement facility is to pay claims once a month. And so there is a... What happens is that claims are evaluated. They are then placed into a payment mode, which means that at that point the facility does all the due diligence that's necessary to determine whether a payment can actually be issued. That involves rechecking and verifying much of the information in a claim. And then the claims that reach the point where they're considered ripe for payment are placed into a group. And then the payments are issued. There have been many occasions where well over 285 claims were paid in a given month. Were there any of those occasions that occurred between January 17 of 2014 when the hold was withdrawn and December 20, 2014, which I understood was the lump payment? I'm not... That's a year. That's a year. In 2014, were there any payments other than the 285 to Korean claimants? To Korean claimants, I believe so. I believe there was another batch of payments earlier in the year. I don't know the exact date of those payments, yes. My understanding, is it incorrect that checks were sent out in December of 2014 to 481 Korean claimants? It's my understanding that the number is slightly under 300. It's 285. Mr. Kim represented in his papers that it was about 300. Where's the number 481? I remember that number. I think that's the total paid in 2014 for Korean claims. So they weren't all paid in December. That goes to your previous question. Over half of them were paid in the last 21 days of the year. That's probably right. They're paid as they become ripe for payment. Where did the January 1 date come from? Was it Andy New Year's or something? I'd like to talk about the structure of this process because I think that gets to your question. The January 1 date was stated in a letter to the district court judge by the claims administrator on behalf of the Finance Committee and said this recategorization will be effective January 1. The way this plan is structured, the recategorization process, is it's a permissive process. The claims administrator may recategorize countries. If the claims administrator is going to recategorize, it has to be based on the economic conditions as stated in the CIA World Factbook that's specified in the plan. There are several reasons why it is a permissive process and why there isn't just an automatic process to recategorize country. And there's not an obligation to constantly adjust countries. First, it's important to note that the recategorization could be up or down. There's nothing that says that recategorization is always an upward recategorization. It could also be a reduction. And we all know that the economic conditions in countries can fluctuate. A claims administrator managing a system... The number on the CIA Factbook doesn't fluctuate. Well, each year there can... Open the CIA Factbook and see what the number is. That's correct, Your Honor. They sued on the theory that the number had gone up on a certain date. That's right. And therefore, pursuant to the procedure that's there, they requested this. Then it's claimed that they got their relief, right? So we're not arguing about whether they should get relief. We're arguing about whether they got the relief that they asked for, right? So when you keep talking about how discretionary it is, I'm not seeing how that tells us that the date should be January 1st. If we're talking about the mootness of an argument, whether you agree with the argument or not, that they should be getting the benefit of having Korea be a richer country. They got the benefit of Korea being essentially qualifying to be a Class 6.1 country. But they didn't get it then. They got it, it's moot, and then they don't get it. That's what I'm not getting. Well, the mootness arises because they requested the relief. They gave up. They did not request retroactive relief. They stated that the relief should be provided as the date of any order. Can I ask you a question? Yes. Did they tell the district court that they wanted relief for these 285 people? Did they ask for that to the district court? I do not recall them asking for that specifically. They went in the district court at the mootness, in the context of the mootness motion. In their reply, they stated that the relief should start as of 2012. They didn't really focus. They may have mentioned the payment stream and the timing of payments, but I don't recall that they specifically stated that the relief should have been granted as of December 4th when the letter was provided to the district court. So if they didn't ask for that, then that isn't in front of us, correct? But if they did, then it's not moot. Is that fair? I think there's two components to the district court's decision. There's the decision that the request to recategorize is moot because recategorization was granted. But the district court went on and said you cannot ask for retroactive. Why would that be retroactive? I get the retroactive point. If I file a motion in January saying I want it recategorized for this year, you grant it as of whatever it is, January 1 of the following year. You're granting in part and denying in part if that's what they're asking for. And so the denial in part would not be moot, and the denial is the 285 or 481 or whatever the universe of these people is. Do you understand what I'm saying? Yes. Is that a fair question? Yes, I understand, Your Honor, and I understand that it's a bit convoluted. I believe that what the district court did was to find the actual request for recategorization that was stated in the original motion to be moot and found that they were asking when they complained about the timing of recategorization, found that to be an additional argument that was being made in response to the mootness motion and that it was barred by the plan. They could not make that argument. The decision was made, the plan grants to the claims administrator the decision. There's nothing in the plan that says when the decision is active. May I ask one more question? Please. If the claims administrator, if they go to the claims administrator and say, we want a recategorization, when they make that request, why aren't they making that request effective as of the date they make it? And so when you grant it the following year, that's a live issue in front of the district court. That's where I'm getting lost. In other words, I don't view that as retroactive. I see. I see your point. The district court didn't perceive it that way. I don't think that argument was made as crisply as you've made it today in front of the district court. But the district court concluded that any request that basically concluded that the claims administrator had the discretion to state the date of recategorization and that any request that it be applied earlier than that date was a request for retroactive application. Okay. That's your argument, is that under the documents, it's up to the administrator to decide the date that the recategorization is effective. That's correct. To do it a year, and that's not a mootness argument. That's a substantive argument. I appreciate, Your Honor, that this has gotten a bit complicated in terms of mootness, the specific. The nature of the argument is not a mootness argument. The nature of the argument goes to when, who gets to state the date. That's correct, Your Honor. Since we're all struggling with this, just a little more clarity. My understanding was also that the request for recategorization appeared to seek some retroactive coverage of that. And the court then, in the response to the mootness motion, I thought what had happened was that there was a statement that the claimants realized that the change in compensation level for qualified claimants applies only prospectively, and so dropped the request for those who had already received compensation. Correct. Point me to where in the plan there is a discretionary grant that would allow the administrator to set the date. The whole provision is in what we call Annex A, claims resolution procedures, that are appended to the settlement facility agreement. It's in Section 6.5H. There are two paragraphs that deal with the categorization of the countries. And the protocol simply says the claims administrator may adjust the categorization of countries due to changed economic circumstances. It says absolutely nothing about when that would become effective. And I think I was explaining earlier that the reason it's permissive and the reason that the claims administrator needs to have this discretion is because the recategorization is not as simple as, the effect of it is not as simple as saying I will pay an extra check to certain people that got paid last week. It is the options available for compensation in Category 6.1 and 6.2 are different. So somebody could have been paid as a Class 6.2. And if you recategorize to 6.1 and say I'm going to apply it to every claim that came up before me this year, you have to go back to all those claims and determine what was the basis of their claim. Is it a qualified claim under 6.1? And it affects also something we haven't talked about at all here because it's not directly in this record, but it's in the entirety of the plan record. The amount of money that's allowed to be paid out in any given year is capped. Or there are funding payment ceilings, to be more precise. And so if you go back and change what you paid in a year, you could be affecting how those payment ceilings have been satisfied or not satisfied. So that would explain the district courts. I thought impression was that it was an administrative choice to pay by a certain time. That's correct. Because administratively, this is very complicated. Not so simple. Further questions?  Thank you. We appreciate your arguments and your briefing. This case will be taken under advisement and a decision will be rendered in due course. Thank you. You may call the next case.